UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**IN RE: JOHN WILLIAM MUNN AND
BECKY JANE MUNN,**

    Debtors.

**VIP FINANCIAL SERVICES ET AL.,**

    Appellants,

v.                                 **No. 4:21-cv-1121-P**

**FROST BANK ET AL.,**

    Appellees.

## MEMORANDUM OPINION & ORDER

VIP Financial Services, LLC ("VIP"); Bozie Madison, Jr.; and Vera Madison (collectively, "Purchasers") appeal the bankruptcy court's September 23, 2021 Order ("Appealed Order") Denying VIP's Motion ("Motion") for Interpretation or Modification of Order Approving Sale of Real Property ("Sale Order"). ECF No. 1-1 at 1–5; ECF No. 2-4 at 8–9; ECF No. 2-5 at 78–103.[1] In four issues, Purchasers contend that the bankruptcy court erred by not interpreting the Sale Order to expressly discharge Appellee Frost Bank's lien ("the Frost Lien") (Issue One) and abused its discretion by refusing to modify the Sale Order to reflect that the sale would be made free and clear of all liens and encumbrances (Issue Two), refusing to fashion an equitable remedy (Issue Three), and excluding certain VIP exhibits (Issue Four). ECF No. 21 at 15. Because the bankruptcy court properly interpreted the Sale Order and did not otherwise abuse its discretion, the Court overrules Purchasers' four issues and affirms the Appealed Order.

---

[1]Bankruptcy Judge Russell Nelms ("former bankruptcy judge") issued the 2016 Sale Order; he retired in 2018.

## FACTUAL & PROCEDURAL BACKGROUND[2]

### A. The former bankruptcy judge approved the Munns' short selling the Property to VIP.

John and Becky Munn filed a Chapter 13 petition for bankruptcy in June 2012. ECF No. 3-5 at 16. They owned a residential property located at 903 Shady Creek Drive in Kennedale, Texas ("Property") that was subject to a first-priority lien held by Ocwen Loan Servicing ("Ocwen Lien") and a second-priority lien held by Frost Bank ("Frost Lien"). *Id.* at 17. Two weeks after filing their petition, the Munns filed their schedules of assets and liabilities. *Id.* at 16; ECF No. 2-2 at 22. They scheduled the Property with a value of $310,700. ECF No. 3-5 at 16; ECF No. 2-2 at 22. In July 2012, Frost filed its proof of claim, asserting a secured claim of $45,906.89. ECF No. 3-5 at 16; ECF No. 4-6 at 14–15. Frost attached to its proof of claim all the underlying loan documents: the promissory note, homestead lien contract and deed of trust, and extension of real estate note and lien. ECF No. 3-5 at 16; ECF No. 4-6 at 14–35. Ocwen's claim ("Ocwen Claim") was for $292,600.[3] ECF No. 3-5 at 17; ECF No. 4-6 at 36. The scheduled value of the Property ($310,700) exceeded the value of the Ocwen Claim.

The Munns proposed a plan to satisfy both the Ocwen and the Frost Claims by surrendering the Property. ECF No. 3-5 at 17; ECF No. 2-2 at 58. The plan was confirmed in September 2012. ECF No. 3-5 at 17; ECF No. 2-2 at 72.

In October 2015, the Munns found a buyer for the Property—VIP. The Munns and VIP signed a real estate contract with a purchase price of $220,000. ECF No. 3-5 at 18; ECF No. 32 at 21–32. Because the purchase price was for less than the total lien amounts on the Property, the Munns and VIP agreed in the contract that closing would occur on or before "thirty days after short sale approved by all lienholders." ECF

---

[2]Most of this section derives from the transcript of the bankruptcy court's hearing on the Motion and the resulting oral findings of fact and conclusions of law. ECF No. 3-5.

[3]In October 2012, a secured proof of claim was filed on Ocwen's behalf. ECF No. 3-5 at 17; ECF No. 4-6 at 36.

No. 3-5 at 18; ECF No. 32 at 25. VIP contacted Frost to negotiate either a reduced payoff of the Frost Claim or VIP's acquisition of the Frost Lien. ECF No. 3-5 at 19; ECF No. 3-3 at 40–46. They did not reach an agreement. ECF No. 3-5 at 19; ECF No. 3-3 at 40–46. The Munns secured Ocwen's tentative agreement to accept a reduced payoff of the Ocwen Claim. *Id.* at 19.

In late January 2016, VIP sent a draft of Ocwen's short-sale agreement to Frost and again tried to convince Frost to agree to a reduced payoff of the Frost Claim. ECF No. 3-5 at 19; ECF No. 3-3 at 47. Frost did not respond. ECF No. 3-5 at 19; ECF No. 3-3 at 47. *Id.* Meanwhile, the Munns and VIP revised the agreed purchase price of the Property downward to $215,000, and Ocwen agreed to a short sale at the new reduced price. ECF No. 3-5 at 19; ECF No. 32 at 33, 38.

In February 2016, the Munns filed their Motion to Short Sale Homestead ("Sale Motion") in their bankruptcy case. ECF No. 3-5 at 18; ECF No. 32 at 17. In the Sale Motion, they explain that they had scheduled the Property with a value of $310,700; that the Property was encumbered by the Ocwen Lien in the approximate amount of $292,600; that they had contracted to sell the Property to VIP for $220,000, which they believed was the current fair market value;[4] and that Ocwen had agreed to accept $215,000 of the sales proceeds in full and final satisfaction of its claim and lien. ECF No. 3-5 at 20; ECF No. 32 at 18–19.

The Sale Motion states that it seeks approval to sell the Property "free and clear of all liens, claims, and encumbrances," but little else about the Sale Motion or the circumstances of its filing indicates that it is a motion for a sale free and clear of liens under § 363(f) of the Bankruptcy Code.[5] As the bankruptcy court pointed out, the Sale Motion differs from a § 363(f) motion for a sale free and clear of liens in several

---

[4] The Sale Motion was not sworn. ECF No. 32 at 17–20.

[5] "Section 363(f) of the Bankruptcy Code sets forth five alternative conditions that must be satisfied for the Court to authorize a debtor . . . to sell its property . . . free and clear of interests of third parties . . . ." *In re Patriot Place, Ltd.*, 486 B.R. 773, 814 (Bankr. W.D. Tex. 2013).

ways. *First*, the Munns did not file the Sale Motion with the available electronic designation that it was a motion for the approval of a sale free and clear of liens. ECF No. 3-5 at 20, 27. *Second*, the Munns likewise did not pay the filing fee applicable to a motion for a sale free and clear of liens. ECF No. 3-5 at 20, 27. *Third*, even though the initial paragraph of the Sale Motion states that the Munns filed it "for approval to short sale [the] Property . . . free and clear of all liens, claims, and encumbrances," the Sale Motion does not include a reference to Section 363(f) of the Bankruptcy Code—the provision applicable to sales free and clear of liens. *Id*. at 20, 28; ECF No. 32 at 17–20. *Fourth*, the Sale Motion does not refer to any standard applicable to the approval of a sale free and clear of liens. ECF No. 3-5 at 20, 28; ECF No. 32 at 17–20. *Fifth*, the Sale Motion does not contain the court-approved negative notice language for a sale free and clear of liens. ECF No. 3-5 at 21, 27; ECF No. 32 at 17–20. *Sixth*, the Sale Motion provides for a 14-day objection deadline and does not mention a hearing; the then-governing local rule contemplated a hearing after at least 24 days' notice. *See* former N.D. TEX. L.B.R. 9007(c); ECF No. 3-5 at 21, 27; ECF No. 32 at 17–20. *Seventh*, the Sale Motion's prayer contains no language requesting approval of the sale free and clear of all liens. ECF No. 3-5 at 20–21; ECF No. 32 at 19. *Finally*, even though the Sale Motion identifies Ocwen as a lienholder, it merely states that Ocwen had agreed to the Short Sale; it does not discuss the discharge of the Ocwen Lien. ECF No. 3-5 at 27.

Nothing about the Sale Motion shows that the parties or the former bankruptcy judge specifically contemplated the discharge of the Frost Lien. *First*, the Sale Motion does not mention the Frost Lien or any liens other than the Ocwen Lien. ECF No. 3-5 at 20, 27. ECF No. 32 at 17–20. *Second*, the certificate of conference does not show that the Munns' counsel conferred with Frost's counsel. ECF No. 32 at 20, 51. *Third*, the Sale Motion's certificate of service expressly references service on certain "Interested Parties," but the only Interested Parties listed are Ocwen, Ocwen's counsel, and the title company assigned to the closing, not Frost. ECF No. 3-5 at 20–21, 28; ECF No. 32 at 19. *Finally*, as the bankruptcy court noted, a copy of the Sale Motion was mailed by regular

first-class mail to Frost's San Antonio post office box solely because of Frost's inclusion on the overall creditor mailing matrix in the Munns' bankruptcy case.[6] That is, Frost received the same notice of the Sale Motion that any other creditor of the Munns except Ocwen received. ECF No. 3-5 at 21; ECF No. 32 at 20.

No one objected to the Sale Motion, and no hearing was held. ECF No. 3-5 at 21–22. The Munns' lawyer uploaded a proposed "unopposed" order for the former bankruptcy judge's signature. *Id.* at 22. On April 5, 2016, the former bankruptcy judge signed the Sale Order granting the Sale Motion without conducting a hearing. *Id.*

The Sale Order allowed the Munns to sell the Property in a short sale. ECF No. 32 at 17–20; ECF No. 3-5 at 22. The Sale Order does not mention Ocwen or Frost, nor does it contain any language referring to a sale of the Property free and clear of any liens or providing for any of the liens in the Property to reattach to the proceeds of sale. ECF No. 32 at 17–20; ECF No. 3-5 at 22. With this signed order, the Property sale was allowed to proceed.

The sale of the Property closed on April 20, 2016. ECF No. 3-5 at 22. VIP's $215,000 payment for the Property was transferred to Ocwen in full and final satisfaction of the Ocwen Lien, and the Munns executed a general warranty deed, without exception for any existing liens, to convey the Property to VIP. *Id.* Ocwen then signed a release of lien. *Id.* at 23. Frost did not receive any of the sales proceeds or a separate payment and never executed a release of lien. *Id.*

## B. VIP sold the Property to the Madisons, triggering this dispute.

About five months after purchasing the Property, VIP sold it to the Madisons for $346,000. *Id.* VIP executed a general warranty deed with a vendor's lien, without exception for any existing liens, dated September 30, 2016, to convey the Property to the Madisons. *Id.*

---

[6]"Notice to creditors and other parties in interest is essential to the operation of the bankruptcy system. Sending notice requires a convenient listing of the names and addresses of the entities to whom notice must be sent . . . . These lists are commonly called the 'mailing matrix.'" FED. R. BANKR. P. 1007, advisory committee's note to 2005 amendments.

After VIP sold the Property to the Madisons, Frost sought to foreclose its lien. This led to a multiparty dispute in state court regarding the nature of the Sale Order and the warranties provided by the Munns and VIP under their general warranty deeds. Ultimately VIP filed the Motion in the bankruptcy court, seeking clarification or modification of the Sale Order or, as a last resort, an equitable remedy.[7] *Id.*; ECF 2-5 at 78–103.

## C. The bankruptcy court denied all relief.

Specifically, VIP requested the bankruptcy court:

- to interpret the Sale Order as providing for the sale of the Property free and clear of all liens, including the Frost Lien;
- to modify the Sale Order to discharge Frost's lien; or
- if the bankruptcy court determined that Frost did not receive notice of the Sale Motion, to implement an equitable remedy in VIP's favor. ECF No. 2-5 at 93, 99, 101; ECF 3-5 at 13–14.

The bankruptcy court denied all three requests. ECF No. 2-1 at 13; ECF No. 3-5 at 25.

*First*, the bankruptcy court denied VIP's request that the court interpret the Sale Order in VIP's favor, reasoning that the Sale Order was not ambiguous and was not a consent order and even if it were, it did not extinguish the Frost Lien. ECF No. 3-5 at 26–27. The bankruptcy court stated the legal proposition that an unambiguous order "must simply be given the meaning and effect dictated by the clear and unambiguous terms of the order." ECF No. 3-5 at 24 (citing *Highland Hills Ltd. v. United States Dep't of Hous. and Urban Dev. ("In re Highland Hills Ltd.")*, 232 B.R. 868, 870 (N.D. Tex. 1999); *United States v. Spallone*, 399 F.3d 415, 421 (2nd Cir. 2005)).

The bankruptcy court concluded,

> [T]he Sale Order was and is clear and unambiguous. The Sale Order simply, clearly, and plainly authorized the [Munns] to enter into the proposed Short Sale of the

---

[7]Although the Madisons originally sought relief, they dropped their request before the bankruptcy court issued its ruling on the Motion or signed the subsequent written Appealed Order. *Id.* at 14.

Property with VIP. Nothing more or less. There is absolutely no language within the Sale Order that either authorizes or provides for a sale of the Property free and clear of liens, including, without limitation, the Ocwen Lien and the Frost Lien. The omission of any language within the Sale Order with respect to any liens is of material significance. As explained by the D.C. Circuit in a prior Bankruptcy Act case, "In the absence of any reference to the contrary in the order of sale, a bankruptcy sale is made subject to valid liens and other encumbrances, in which case the interests of the lienholders are in no way affected by the sale." And then picking back up, "When a sale free of liens is ordered, invariably the order provides for a transfer of all valid encumbrances from the *res* to its proceeds. The Bankruptcy Court has power to displace existing liens only to the extent to which it imposes them upon the proceeds." That's *Gotkin v. Korn*, 182 F.2d 380, 382 (D.C. Cir. 1950). *See also In re Sapolin Paints, Inc.*, 11 B.R. 930, 936, n.8 (Bankr. E.D. N.Y. 1981) (quoting the foregoing passage from *Gotkin* with approval in finding that a sale was approved subject to existing liens) [(cleaned up)].

With the foregoing in mind, the Sale Order here not only makes no reference to the sale being free and clear of liens, but it also makes no reference to any liens reattaching to the proceeds of sale. Thus, it is clear that the Sale Order neither authorized nor provided for a sale of the Property free and clear of liens. It simply authorized the [Munns] to enter into the Short Sale Agreement with VIP.

ECF No. 3-5 at 25–27.

The bankruptcy court alternatively determined that even if the Sale Order were ambiguous, the interpretation would remain the same. *Id.* at 27. The bankruptcy court stated that when an independent court order is ambiguous, the court should "simply consider the record of the proceedings upon which the order was based to discern the Court-intended meaning . . . ," again citing *Spallone*, 399 F.3d at 421, as an example. ECF No. 3-5 at 25. The bankruptcy court discussed its analysis, concluding that the former bankruptcy judge's clear intent with the Sale Order

> was to simply authorize the [Munns] to proceed with a sale of the Property to VIP on terms under which Ocwen had agreed to a reduced payoff in full and final satisfaction of its allowed claim and the Ocwen Lien.
>
> The Sale Order provides no relief one way or the other in relation to the Frost Lien or any other lien that may have existed in the Property at the time.

*Id.* at 27–28.

The bankruptcy court also determined that its interpretation would have been no different if Frost had consented to the Sale Order (though it found no evidence of such consent). *Id.* at 29. The bankruptcy court noted that with an agreed or consent order, a court applies contract-interpretation rules. ECF No. 3-5 at 25 (citing *VSP Labs, Inc. v. Hillair Cap. Invests., LP*, 619 B.R. 883, 901–02 (N.D. Tex. 2020), *aff'd sub nom.*, *In re PFO Glob., Inc.*, 26 F.4th 245 (5th Circ. 2022), *cert. denied*, *VSP Labs, Inc. v. Hillair Cap. Invests.*, No. 21-1434, 2022 WL 1914175 (U.S. June 6, 2022)). The bankruptcy court acknowledged that with an ambiguous consent order, it would consider extrinsic evidence to determine the parties' intent. *Id.* at 28. However, the bankruptcy court found that even if Frost had consented to the Sale Order, the Munns' intent was to sell the Property, not to sell it free and clear of any lien and not to extinguish any lien. *Id.* at 29. The Munns' lawyer confirmed that the Munns filed the Sale Motion and obtained the Sale Order only to get permission to proceed with the sale of the Property; they were not trying to get a sale free and clear of any liens or to otherwise extinguish any liens, including the Ocwen and Frost Liens. *Id.* at 28–29. The bankruptcy court therefore denied VIP's request for the Court to interpret the Sale Order as anything other than a Sale Order. *Id.* at 29.

*Second*, the bankruptcy court denied VIP's alternative request to modify the Sale Order under Federal Rule of Civil Procedure 60(a) to discharge the Frost Lien. *Id.* at 33. VIP's request was based on the premise that the former bankruptcy judge implicitly discharged the Frost Lien. Frost first disputed the premise, arguing that there was no hearing on the Sale Motion, no factual basis for such an adjudication, and no adjudication. The bankruptcy court agreed with Frost, holding that there was "no mistake to correct." *Id.* at 31. In the Sale Motion, the

Munns alleged that they had scheduled the Property with a fair market value of $310,700 and that it was encumbered by the Ocwen Lien of approximately $292,600. *Id.* The Sale Motion did not allege any other values for the Property or the Ocwen Lien, and no evidentiary hearing was held. *Id.* The bankruptcy court therefore determined that the Property did have residual value to support the Frost Lien. *Id.* Consequently:

> there was no basis upon which to conclude that the Frost Lien was or could have been discharged in connection with approval of the sale. It is patently clear that there was never a[n] "adjudication" by the Court to the effect that the Ocwen Claim exceeded the value of the Property or that the Frost Lien was discharged or was dischargeable.

*Id.* at 31–32.

Frost also contended that it was not properly served with the Sale Motion, so no valid adjudication concerning the Frost Lien could have occurred. *Id.* at 29–30. The bankruptcy court agreed that "even if the [Munns] had intended to affect Frost's lien rights by and through the Sale Motion, Frost was never properly served with the Sale Motion, and therefore the proposed change to the Sale Order would violate Frost's due process rights." *Id.* at 32. The bankruptcy court explained that Bankruptcy Rule 6004(c) required a "motion to sell property free and clear of liens [to] be served on all" lienholders "in accordance with Bankruptcy Rule 9014." *Id.* at 32. Rule 9014(b) requires that the motion be served according to Bankruptcy Rule 7004's requirements for the service of a summons and complaint. *Id.* The bankruptcy court stated:

> Bankruptcy Rule 7004(h) provides that service on an insured depository institution, which Frost was at all relevant times, in a contested matter shall be made by certified mail addressed to an officer of the institution, unless (1) the institution has appeared by its attorney, in which case the attorney shall be served by first class mail; (2) the Court orders otherwise; or (3) the institution has waived in writing its entitlement to service by certified mail by designating an officer to receive service.

*Id.* at 32–33.

The bankruptcy court found that "[n]o evidence was introduced of any of the three exceptions to the requirements of Bankruptcy Rule 7004(h)" and concluded that the Munns' sending "a copy of the Sale Motion to Frost by regular mail to a post office box in San Antonio" did not satisfy "the requirements of Bankruptcy Rule 7004(h)." *Id.* at 33. The bankruptcy court also concluded that the fact that the service of the Motion did not meet the requirements for the service of a motion to sell property free and clear of liens was "further evidence of the fact that no mistake was made with respect to the terms of the Sale Order." *Id.*

*Third*, the bankruptcy court rejected VIP's request to fashion an equitable remedy in its favor based on the circumstances. *Id.* The bankruptcy court agreed with Frost that the record contained no basis for the request. Specifically, the bankruptcy court found that the record showed that VIP was "fully familiar with the existence of the Frost Lien and the complications that it posed to the closing of the sale" and "actually attempted to negotiate a lower payoff of Frost or an acquisition of the Frost Lien." *Id.* The bankruptcy court further found that "VIP's proposals were undisputedly rejected by Frost." *Id.*

The bankruptcy court pointed to steps that VIP could have taken to protect itself, given the language of its contract with the Munns stating that the closing would be subject to the approval of the Short Sale by all lienholders:

> VIP could have protected itself by demanding (a) that the [Munns] include an unequivocal and specific request []in the Sale Motion for the sale to be free and clear of the Frost Lien; (b) that the Sale Motion be properly served on Frost; and (c) that the Sale Order clearly, unequivocally, and specifically include language providing for a sale free and clear of the Frost Lien. VIP neglected to do so. Moreover, VIP failed to timely request a reconsideration of the Sale Order, and it failed to require the [Munns] to pursue separate supplemental pre-closing relief.

*Id.* at 33–34. Thus, the bankruptcy court held that VIP did not establish any entitlement to equitable relief. *Id.*

## JURISDICTION

In an appeal of a bankruptcy court's resolution of bankruptcy-related claims, this Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a).

## GENERAL STANDARDS OF REVIEW

When a district court reviews a bankruptcy court's decision, the district court functions as an appellate court and utilizes the same standards of review generally applied by a federal court of appeals. *In re Webb*, 954 F.2d 1102, 1104 (5th Cir. 1992). Conclusions of law and mixed questions of fact and law are reviewed de novo. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). Findings of fact are reviewed for clear error. *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992). Findings are reversed only if, based on the entire body of evidence, the court is left "with the definite and firm conviction that a mistake has been made." *Beaulieu v. Ragos*, 700 F.3d 220, 222 (5th Cir. 2012). As to the bankruptcy court's weighing of the evidence, when it "is plausible in light of the record taken as a whole, a finding of clear error is precluded, even if we would have weighed the evidence differently." *In re Bradley*, 501 F.3d 421, 434 (5th Cir. 2007). The Court will therefore affirm findings based on the bankruptcy court's weighing of the evidence under the same test. *In re Cmty. Home Fin. Servs. Corp.*, 32 F.4th 472, 482 (5th Cir. 2022) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985), and *In re Trendsetter HR L.L.C.*, 949 F.3d 905, 910 (5th Cir. 2020)).

## ANALYSIS

In their four issues, the Purchasers appeal the bankruptcy court's refusal to interpret the Sale Order to discharge the Frost Lien, refusal to modify the Sale Order to discharge the Frost Lien, denial of equitable remedies, and exclusion of various items of evidence offered by VIP. ECF No. 21 at 15. Addressing each issue in turn, the Court overrules them all.

### A. The Bankruptcy Court properly interpreted the Sale Order.

Purchasers contend in their first issue that the bankruptcy court erred by not interpreting the Sale Order to expressly discharge the Frost Lien. Frost responds that the bankruptcy court properly interpreted the

11

Sale Order to be what it purports to be on its face—an unambiguous short-sale order. The bankruptcy court found that the Sale Order authorized a short sale but did not authorize a sale of the Property free and clear of liens, including the Frost Lien and the Ocwen Lien. The Court agrees with that holding.

1. Standard of Review

Purchasers and Frost disagree about the appropriate standard of review the Court should employ in reviewing the bankruptcy court's interpretation of the Sale Order. A district court must defer to a "bankruptcy court's reasonable resolution of any ambiguities" in its own order, but if the order is not ambiguous, the review is de novo. *Nat'l Gypsum Co.*, 219 F.3d at 484; *VSP Labs, Inc.*, 619 B.R. at 901.

Here, however, the bankruptcy court interpreted a Sale Order issued by the former bankruptcy judge. Purchasers contend that the Court should therefore review the bankruptcy court's interpretation of the Sale Order de novo. Conversely, Frost argues that the Court should review the bankruptcy court's interpretation of the Sale Order for an abuse of discretion. Neither Frost nor Purchasers cite any controlling authority for the applicable standard of review in this situation. Because the bankruptcy court's interpretation of the Sale Order survives review even under the stricter de novo standard, the Court declines to resolve the issue. *See Floyd v. Paulson*, 520 F.3d 497, 499 n.3 (D.C. Cir. 2008).

2. The bankruptcy court properly found that the Sale Order was not ambiguous and properly limited its review to the Sale Order's four corners.

Purchasers contend that the bankruptcy court's "first interpretive error" "was concluding that if the Sale Order was clear and unambiguous on [its] face, [the bankruptcy court] could look only to the language of the order itself." ECF No. 21 at 33. Purchasers also contend that the Sale Order "at minimum" lacks clarity. *Id.* at 34. The Court rejects both contentions.

The bankruptcy court did not err by construing the Sale Order by looking only at the Sale Order itself. "The terms of an unambiguous court order are interpreted according to their plain meaning and are enforced as written." *Highland Hills*, 232 B.R. at 870. The plain text of

an unambiguous order controls. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151–52 (2009); *Highland Hills*, 232 B.R. at 870. As Purchasers point out, when considering a consent order, a district court applies "ordinary principles of contract interpretation." *PFO Glob., Inc.*, 26 F.4th at 254. However, one such principle is that when a contract is not ambiguous, "it must be enforced irrespective of the parties' subjective intent; the same applies to an unambiguous court order" to which parties consent. *Id.* Thus, an unambiguous order, whether it is independent or consented to, is to "be construed only by reference to the 'four corners' of the order itself." *Robinson v. Vollert*, 602 F.2d 87, 92 (5th Cir. 1979); *see also VSP Labs,* 619 B.R. at 901 (declining to consider extrinsic evidence after holding order's language unambiguous).

Purchasers argue that the bankruptcy court erred by limiting its review to the Sale Order even if it is not ambiguous. They cite *S(c)holtz for Use of Barnett Nat. Bank of Jacksonville v. Hartford Acc. & Indem. Co.*, in which the Fifth Circuit applied Florida law for the proposition that "every judgment may be construed and aided by the entire record." 88 F.2d 184, 185 (5th Cir. 1937). Florida law has no application to this case. The Texas cases that Purchasers cite for the same proposition are likewise distinguishable. In *First Bank v. Brumitt*, the Supreme Court of Texas clarified that contextual evidence *may* be considered "to inform our understanding of the unambiguous terms actually contained in the contract itself," but shall not be considered for the purpose of "add[ing] to, alter[ing] or contradict[ing] the terms to which the parties had agreed" or "to make the language say what it unambiguously does not say." 519 S.W.3d 95, 110 (Tex. 2017). In *URI, Inc. v. Kleberg Cnty.*, the Supreme Court of Texas similarly distinguished between contextual evidence that may properly be reviewed—objective and informative— and contextual evidence that may not be reviewed—subjective and transformative—in construing unambiguous language. 543 S.W.3d 755, 768–70 (Tex. 2018). In *Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, the same court held that the trial court reversibly erred by concluding that a fee agreement was ambiguous and allowing the jury to consider extrinsic evidence of intent. 352 S.W.3d 445, 451–53 (Tex. 2011). "Extrinsic evidence cannot be used to show that the parties

13

probably meant, or could have meant, something other than what their agreement stated." *Id.* at 451. The Purchasers wanted the bankruptcy court and want this Court to consider extrinsic evidence to change the meaning of the unambiguous Sale Order. The bankruptcy court properly declined to do so, and this Court will follow suit.[8]

Purchasers also rely on language from the United States Supreme Court stating that "a decree is to be construed with reference to the issues it was meant to decide." *City of Vicksburg v. Henson*, 231 U.S. 259, 269 (1913). Purchasers' reliance on *Vicksburg* to argue for a mandatory review of the record even when the order is not ambiguous appears misplaced. *See, e.g.*, *Spallone*, 399 F.3d at 421 (stating the same *Vicksburg* language as Purchasers in analyzing an ambiguous order); *In re Sailing Emporium, Inc.*, No. 16-24498-TJC, 2017 WL 5641370, at *6 (Bankr. D. Md. Nov. 21, 2017) (first determining order was not ambiguous on its face and then relying on the same *Vicksburg* language in alternatively construing the order as ambiguous but reaching same result).[9]

The Court agrees with the bankruptcy court that the Sale Order is not ambiguous. The Sale Order provides,

> IT IS ORDERED [t]hat [the Munns] are hereby authorized to enter into the short-sale of [their] . . . Property . . . .

---

[8]*See Ogden v. Saunders*, 25 U.S. (12 Wheat.) 213, 332 (1827) (Marshall, C.J., dissenting) ("To say that the intention of the instrument must prevail; that this intention must be collected from its words; that its words are to be understood in that sense in which they are generally used by those for whom the instrument was intended; that its provisions are neither to be restricted into insignificance, nor extended to objects not comprehended in them, nor contemplated by its framers;—is to repeat what has been already said more at large, and is all that can be necessary."); *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 202 (1819) (Marshall, C.J.) ("It would be dangerous in the extreme, to infer from extrinsic circumstances, that a case for which the words of an instrument expressly provide, shall be exempted from its operation.").

[9]Nevertheless, as noted in the next subsection of this Memorandum Opinion and Order, even if the Sale Order were ambiguous and the bankruptcy court (and this Court) considered the Sale Order's contextual record or even evidence later submitted by the parties for the bankruptcy court's consideration of the Motion, the answer would be the same: the Sale Order authorizes a short sale, no more and no less.

> IT IS FURTHER ORDERED[] that [the Munns] are
> hereby authorized to pay Four Hundred dollars ($400.00)
> attorney's fees . . . for the preparation and prosecution of
> this Motion.

ECF No. 2-4 at 9. That is all the decretal language present in the Sale
Order. The Sale Order simply gives permission to the Munns to short
sell the Property and allows them to pay their counsel for drafting and
pursuing the Sale Motion. *See, e.g.*, *Morrison v. Brosseau*, 377 B.R. 815,
824 (E.D. Tex. 2007) ("Judge Rhoades is correct that all the Sale Order
did, on its face, was sell the bankruptcy estate's interest, if any, in the
property to Ranzau. The Sale Order itself makes no determination as to
any other person's right to the property."). Any other relief requested in
the Sale Motion was implicitly denied when the Sale Order did not
explicitly grant it. *Cf. Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th
Cir. 1994) ("The denial of a motion by the district court, although not
formally expressed, may be *implied* by the entry of . . . an order
inconsistent with the granting of the relief sought by the motion.").

3. Alternatively, even if the Sale Order were ambiguous, whether it
   was an independent court order or a consent order, the
   bankruptcy court properly interpreted the Sale Order.

Purchasers also argue that the bankruptcy court erred by: (1)
concluding that the Sale Order was an independent court order and that
therefore the parties' intent and the purpose and context of the Sale
Motion were not relevant; (2) determining that the Sale Order's meaning
would not change upon considering the record; and (3) attaching more
weight to the facts supporting its own interpretation than to the facts
supporting Purchasers' interpretation. ECF No. 21 at 36–37. Frost
responds: (1) the Sale Order is not a consent order, (2) the Munns'
lawyer's testimony shows that the Munns' intent was to persuade the
former bankruptcy judge to allow a short sale of the Property, and (3)
the bankruptcy court reviewed the record and reached the same result
it had initially reached upon determining that the Sale Order was not
ambiguous. ECF No. 24 at 48, 52, 54.

> *a. Even if the Sale Order were ambiguous, the bankruptcy court*
> *properly determined that the Sale Order is not a consent order.*

The bankruptcy court explicitly found that the Sale Order was not presented as a consent order and that there was "virtually no evidence" that it was a production of negotiations. Correspondingly, the bankruptcy court implicitly found that the Sale Order is not a consent order. Purchasers challenge this implicit finding. The bankruptcy court properly determined that the Sale Order is not a consent order and did not clearly err by doing so.

A bankruptcy trustee may sell property free and clear of an entity's lien interest under five different scenarios. 11 U.S.C. § 363(f). Purchasers seek to fit the sale of the Property under § 363(f)(2), which allows the sale if "such entity consents." *Id.* § 363(f)(2). Purchasers contend that the Sale Order is a consent order because "Frost Bank is deemed to have consented to the sale free and clear of its lien by failing to object to the sale as requested in the [Sale M]otion." ECF No. 21 at 32. None of the cases Purchasers cite for this proposition are binding, and all are distinguishable. In all but one of the cases Purchasers cite for this proposition, notice was not an issue. *See In FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283–84, 285 (7th Cir. 2002); *In re Kimmel's Coal & Packaging, Inc.*, No. 18-1609, 2020 WL 5576960, at *6 & n.14 (Bankr. M.D. Pa. June 1, 2020); *In re Wilhoite*, No. 3:11-6339, 2014 WL 1922846, at *10 (Bankr. M.D. Tenn. May 14, 2014); *In re AmTrust Fin. Corp.*, No. 09-21323, 2010 WL 4917557, at *2 (Bankr. N.D. Ohio Sept. 22, 2010); *In re McKinney Towne Crossing, L.P.*, No. 10-40348, 2010 Bankr. LEXIS 5833, at *9 (Bankr. E.D. Tex. May 25, 2010); *In re Sigma OH Indus., Inc.*, No. 09-44525, 2010 WL 4917558, at *3 (Bankr. N.D. Ohio Apr. 26, 2010); *In re Michael Day Enters., Inc.*, Nos. 09-55159, 09-55162, 2010 WL 4917608, at *2 (Bankr. N.D. Ohio Jan. 13, 2010). In *Veltman v. Whetzal*, the co-owners expressly consented in writing to the sale of the property free and clear of their interests; deemed consent was not an issue. 93 F.3d 517, 521 (8th Cir. 1996).

Here, however, it is undisputed that Frost did not expressly consent and that it did not receive proper notice of the Sale Motion. The bankruptcy court found that Frost received a copy of the Sale Motion as

a member of the Munns' overall creditor matrix by ordinary mail. All the Munns' listed creditors in the bankruptcy case did (unless they had undeliverable addresses). *See* ECF No. 32 at 20, 48–51. But Frost did not receive proper or adequate notice as an *interested party* to the Sale Motion, Frost was not mentioned anywhere in the Sale Motion, no hearing on the Sale Motion occurred, and Frost's counsel did not represent that Frost had consented to the Sale Motion. The Court therefore holds that the bankruptcy court properly found and correctly concluded that there was no evidence of Frost's consent to the Sale Motion and that Frost did not consent to a sale of the Property free and clear of its lien. *See Ray v. Norseworthy*, 90 U.S. 128, 135 (1874) (holding secured creditors "must have due opportunity to defend their interests and consequently must be properly notified and summoned to appear for that purpose"); *cf. Matter of Royale Airlines, Inc.*, 98 F.3d 852, 857 (5th Cir. 1996) (holding evidence mandated finding that secured creditor implicitly consented to former trustee's inaction but stating that "such consent should not be lightly inferred").

> *b. Even if the Sale Order were ambiguous, the bankruptcy court properly determined that only the record upon which it was based may be reviewed for the former bankruptcy judge's intent.*

Purchasers concede that with an independent order, as opposed to a consent order, the objective is to give effect to the former bankruptcy court's intent, not the parties' intent. *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 287 (3d Cir. 1991). Because the bankruptcy court correctly determined that the Sale Order was not a consent order, it also correctly determined which evidence to consider in construing the Sale Order. When an independent order is ambiguous, the Court reviews the record upon which the order was based to construe the order's meaning. *In re Tomlin*, 105 F.3d 933, 940 (4th Cir. 1997); *see, e.g.*, *In re Gayety Candy Co., Inc.*, 625 B.R. 390, 413 (Bankr. N.D. Ill. 2021). None of the evidence supporting the Munns' reasons for filing the Sale Motion was submitted for the former bankruptcy judge's consideration when the Sale Order was signed; the bankruptcy court therefore properly did not consider it. Reviewing the scant record upon which the Sale Order was based, the Court holds that the bankruptcy court properly construed the

Sale Order, especially given the ways the Sale Motion differed from a motion to sell free and clear of all liens:

- The Sale Motion does not mention any liens other than the Ocwen Lien;

- The Sale Motion indicates that Ocwen had agreed to take less than full payment of its claim against the Munns;

- The Sale Motion's certificate of conference does not state that the Munns' counsel conferred with Frost's counsel;

- The Sale Motion names Interested Parties, but it does not name Frost at all;

- The Sale Motion's negative notice language is not the language that was then required of a motion to sell free and clear of liens;

- The Sale Motion does not reference Section 363(f) of the Bankruptcy Code or any legal standards applicable to a sale free and clear of liens;

- There was no hearing despite the local rules' contemplating a hearing for a motion to sell free and clear of liens;

- The Sale Motion was not electronically filed and docketed as a motion to sell free and clear of liens; and

- The required filing fee for a motion to sell free and clear of liens was not paid. ECF No. 3-5 at 20–22, ECF No. 32 at 20.

Further, the bankruptcy court's relying on these facts (rather than on facts that support Purchasers' interpretation of the Sale Order) is not clear error because the bankruptcy court's theory is plausible when considering the record. *See Bradley*, 501 F.3d at 434 (prohibiting finding of clear error when bankruptcy court's weighing of evidence is "plausible in light of the record").

> c. *Even if the Sale Order were an ambiguous consent order, the bankruptcy court correctly determined that the Sale Order reflects the Parties' intent and that the extrinsic evidence shows that the Parties' intent was just to sell the Property, not to sell it free and clear of the liens.*

Even if the Sale Order were an ambiguous consent order, this Court would uphold the bankruptcy court's conclusion that the Sale Order is merely that and that the parties intended that it be only a Sale Order and not an order to sell the Property free and clear of all liens. In construing an ambiguous consent order, this Court would determine the parties' intent by considering not only the record existing at the Sale

Order's issuance, but also extrinsic evidence submitted later. *See, e.g.*, *In re Pearson*, 394 B.R. 133, 142 (Bankr. S.D. Tex. 2008) (citing *Carpenters Amended & Restated Health v. Holleman*, 751 F.2d 763, 764 (5th Cir. 1985)) (a contract-interpretation case applying Texas law).[10]

There was a conflict in the evidence presented on the parties' purpose in filing the Sale Motion. Mr. Munn testified he would not have sold the Property to VIP if he had known that the Frost Lien would not be extinguished pursuant to the Sale Motion and that he had trusted his lawyer "to do the right thing." ECF No. 3-2 at 16. However, Mr. Munn also testified that he did not know what a Section 363 sale motion was, nor did he know why his lawyer alleged in the Sale Motion that it was both a motion for a short sale and a Section 363 motion to sell the Property free and clear of all liens. ECF No. 3-2 at 15.[11] The Munns' lawyer confirmed that they filed the Sale Motion and obtained the Sale Order only to get permission to proceed with the sale of the Property; the Munns were not trying to get a sale free and clear of any liens or to otherwise extinguish any liens via the Sale Order, including the Ocwen and Frost Liens. ECF 3-5 at 28–29.

Purchasers' argument that the Munns' lawyer's intent was irrelevant and that Mr. Munn's deposition testimony favoring Purchasers' interpretation outweighs the lawyer's testimony is unavailing. Applying the appropriate standard of review, the Court holds that the bankruptcy court's attaching greater weight to the Munns' lawyer's testimony is plausible in light of the record, as is the bankruptcy court's finding based on that testimony that the Munns

---

[10]Purchasers contend that the bankruptcy court erred by disregarding evidence allegedly more pertinent to the analysis but inconsistent with the bankruptcy court's interpretation, relying on Fifth Circuit cases involving the construction of contracts under federal law. ECF No. 21 at 37. *See AAA Bonding Agency, Inc. v. United States Dep't of Homeland Sec.*, 596 F. App'x 294, 297 (5th Cir. 2015) (quoting Restatement (Second) of Contracts § 202(1) (Am. Law Ins. 1981)); *see Univ. of Tex. Sys. v. United States*, 759 F.3d 437, 443 (5th Cir. 2014). However, federal courts in this Circuit look to state law, not federal law, to provide the rules of contract interpretation. *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996).

[11]The bankruptcy court excluded Mr. Munn's deposition testimony, and this Court affirms that ruling in the discussion of Purchaser's fourth issue. The Court considers the evidence only to resolve this alternative subissue.

sought only a short-sale order with their Sale Motion. *Cmty. Home Fin. Servs. Corp.*, 32 F.4th at 482; *Bradley*, 501 F.3d at 434.

For these reasons, the Court overrules Purchasers' first issue.

## B. The bankruptcy court did not abuse its discretion by refusing to modify the Sale Order.

In their second issue, Purchasers contend that the bankruptcy court erred by not modifying the Sale Order under Federal Rule of Civil Procedure 60(a) because the former bankruptcy judge granted the relief requested in the Sale Motion, which was a sale free and clear of all liens. ECF No. 38. Frost responds that the bankruptcy court properly declined to modify the Sale Order because the former bankruptcy judge did not discharge the Frost lien. Therefore, the modification would have been substantive, which is not allowed under Rule 60(a).

The Court reviews the denial of a motion under Federal Rule 60(a) for an abuse of discretion. *Isbell Recs., Inc. v. DM Recs., Inc.*, 774 F.3d 859, 869 (5th Cir. 2014). "A Bankruptcy Court does not abuse its discretion unless its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence." *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008).

Federal Rule 60(a) governs corrections to a judgment, order, or record. It provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." FED. R. CIV. P. 60(a). The rule can apply in bankruptcy cases like this one. *See* FED. R. BANKR. P. 9024.

Rule 60(a) allows the court to correct the judgment so that it "accurately reflect[s] the way in which the rights and obligations of the parties have in fact been adjudicated." *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 193 (5th Cir. 2011) (quoting *Bernstein v. Lefrak (In re Frigitemp Corp.)*, 781 F.2d 324, 327 (2d Cir. 1986)). Under the rule, clerical, mathematical, and typographical errors can be corrected, but no substantive changes can be made. *Id.* at 193–94; *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1117 (5th Cir. 1998). "[T]he rule does not grant a district court carte blanche to supplement by amendment an

earlier order by what is *subsequently* claimed to be an oversight or omission." *In re Galiardi*, 745 F.2d 335, 337 (5th Cir. 1984) (emphasis added).

As noted above, the Sale Order only authorized a short sale and the payment of attorney's fees. It did not discharge the Frost Lien or any other lien. Thus, the bankruptcy court did not abuse its discretion by refusing to modify the Sale Order to discharge the Frost Lien.

The Court overrules Purchasers' second issue.

### C. The bankruptcy court properly denied VIP's request for equitable relief.

In their third issue, Purchasers contend that the bankruptcy court erred by refusing to grant equitable relief under 11 U.S.C. § 105. Frost responds that the bankruptcy court correctly denied Purchasers' equitable relief because VIP did not treat Frost equitably and caused its own harm. The Court reviews the denial of an equitable remedy under 11 U.S.C. § 105 for an abuse of discretion. *In re Sadkin*, 36 F.3d 473, 478 (5th Cir. 1994). A bankruptcy court abuses its discretion when it applies the wrong law or relies on clearly erroneous findings of fact. *In re TWL Corp.*, 712 F.3d 886, 891 (5th Cir. 2013). Section 105(a) allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate" under the Bankruptcy Code and to take "any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C.A. § 105(a). A bankruptcy court's general equitable powers stem from this statute. *In re Ward*, 978 F.3d 298, 303 (5th Cir. 2020).

As the Fifth Circuit has explained,

> First, Section 105(a) permits courts to enforce the rules in order to prevent an abuse of process. . . .

> Second, Section 105(a) authorizes a bankruptcy court to fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code. Nevertheless, the powers granted by that statute must be exercised in a manner that is consistent with the Bankruptcy Code. The statute does not authorize the bankruptcy courts to create substantive rights that are

> otherwise unavailable under applicable law, or constitute a roving commission to do equity.
>
> . . . .
>
> Finally, Section 105(a) provides equitable powers for the bankruptcy court to use at its discretion. . . .

*Sadkin*, 36 F.3d at 478 (internal quotation marks and citations omitted).

The bankruptcy court here had nothing to correct. The record shows that VIP knew before the Sale Motion was filed that Frost was a lienholder of the Property and that Frost opposed VIP's purchasing the Property for less than the cumulative value of the liens against it. VIP also knew that its contract with the Munns stated that the closing would be subject to the approval of the Short Sale by all lienholders. As the bankruptcy court noted, VIP could have protected itself by requiring that (a) the Sale Motion contain "an unequivocal and specific request for the sale to be free and clear of the Frost Lien"; (b) "the Sale Motion be properly served on Frost"; and (c) "the Sale Order clearly, unequivocally, and specifically include language providing for a sale free and clear of the Frost Lien." ECF No. 3-5 at 34. VIP did not.

VIP also could have timely requested reconsideration of the Sale Order or refused to close with the Munns until the Frost Lien issue was resolved. VIP did not. Considering VIP's knowledge of the Frost Lien and its failed negotiations with Frost, its failure to ensure that the Sale Motion and Sale Order discharged the Frost Lien, its closing on the Property despite no discharge of the Frost Lien, and its failure to timely seek a judicial remedy, the Court holds that the bankruptcy court did not abuse its discretion by refusing to grant equitable relief. *See, e.g.*, *In re Stern*, 204 F.3d 1117, 1999 WL 1330645, at *3 (5th Cir. 1999) (holding bankruptcy court did not abuse its discretion by declining to exercise its §105(a) equitable powers because it did not apply wrong legal standards and its fact findings were not clearly erroneous); *In re Sharif*, 565 B.R. 636, 642–43 (N.D. Ill. 2017) (holding bankruptcy court did not abuse its discretion by declining to award creditor reimbursement under § 105(a) when creditor conceded that her house payments were voluntary and that she had always known the house was part of the bankruptcy estate, and she failed to timely tell the bankruptcy trustee and the court that

she was making the alleged payments), *appealed sub nom.*, *Estate of Wattar v. Fox*, No. 17-1615 (7th Cir. filed Mar. 23, 2017).

The Court overrules Purchasers' third issue.

### D. The bankruptcy court did not abuse its discretion by excluding VIP's exhibits.

In Purchasers' fourth issue, they contend that the bankruptcy court abused its discretion by excluding VIP's Exhibits D, G, I,[12] and L and that the error was not harmless.[13] Frost Bank responds that the trial court properly excluded the evidence.

The Court reviews the bankruptcy court's evidentiary rulings for an abuse of discretion. *In re Repine*, 536 F.3d 512, 518 (5th Cir. 2008). Even if an appellant proves that a bankruptcy court abused its discretion by excluding evidence, such error is only reversible if the appellant also proves that its substantial rights were prejudiced by it. FED. R. CIV. P. 61; FED. R. BANKR. P. 9005; FED. R. EVID. 103(a); *In re Pequeno*, 223 Fed. App'x 307, 308 (5th Cir. 2007) (per curiam); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 370 (5th Cir. 2000); *In re Inspirations Imports, Inc.*, No. 3:13-CV-4331-D, 2014 WL 1410243, at *2 (N.D. Tex. Apr. 3, 2014).

For the reasons explained below, the Court overrules this issue.

#### 1. Exhibit D: the Munns' Fourth Bankruptcy Petition

Purchasers sought to introduce the Munns' Fourth Bankruptcy Petition to show that a few months after the Sale Order, the Munns did not schedule debt owed to Frost or VIP. ECF No. 3-4 at 50–56. Frost objected that the petition was not relevant and that pleadings are not evidence. The bankruptcy court sustained Frost's relevance objection and excluded the exhibit. On appeal, Purchasers contend that the

---

[12]Purchasers mistakenly identify Exhibit I as Exhibit J. Because their description of the exhibit clearly points to Exhibit I and not Exhibit J, the Court will address the exclusion of Exhibit I. *Compare* ECF No. 3-2 at 56–76 (Exhibit I) with *id.* at 77–79 (Exhibit J).

[13]Purchasers' Statement of Issue Four in their Statement of the Issues Presented also challenges the exclusion of Exhibits E, F, J, and K. However, beyond that bare mention, Purchasers do not discuss the exclusion of those exhibits. The Court therefore declines to address the propriety of their exclusion. *See, e.g.*, *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

exhibit was "relevant because the parties' course of performance is strong evidence of their intent." ECF No. 21 at 56. Frost replies that the exhibit is not relevant "to the interpretation of the Sale Order" and again states that pleadings are not evidence. ECF No. 24 at 57. Because the Court agrees with the bankruptcy court that the Sale Order was not ambiguous, evidence of the parties' intent, especially evidence created after the Sale Order,[14] is not relevant. *See Highland Hills, Ltd.*, 232 B.R. at 870 ("The terms of an unambiguous court order are interpreted according to their plain meaning . . . ."); *cf. Rice v. Cont'l Cas. Co.*, 153 F.2d 964, 966 (5th Cir. 1946) ("The language being plain and unambiguous, we do not need to look to extrinsic evidence for assistance in construing these orders of the state rate-making board.").

The Court overrules this portion of Purchasers' fourth issue.

2.  Exhibit G: John Munn's Deposition Upon Written Questions

Exhibit G is a Deposition Upon Written Question ("DWQ") of John Munn that had been taken in a related state-court matter that was still pending. ECF No. 3-2 at 8–23. Munn had not been subject to cross-examination by Frost, and Frost had lodged objections to the deposition in the state court that had not yet been resolved by the time of the hearing on the Appealed Order in the bankruptcy court. The bankruptcy court chose not to "pre-admit" the Exhibit because of Frost's pending state-court objections but told Purchasers, "If you want to offer additional foundational evidence to try to get it in otherwise, we'll take it up in due course." ECF No. 13-1 at 59–60. Purchasers did not offer additional foundational evidence or re-offer the exhibit.

Purchasers do not challenge the basis for the bankruptcy court's ruling. Instead, they summarily contend that the exhibit was admissible under Federal Rule of Civil Procedure 32(a)(8)[15] and that its exclusion

---

[14]*See supra* note 11.

[15]That rule provides,

> **(8)** *Deposition Taken in an Earlier Action.* A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the

was harmful. Purchasers provide no support for their contention that Exhibit G's exclusion was error beyond a bare citation to FED. R. CIV. P. 32(a)(8), and they provide no harm analysis.[16] The Court therefore overrules this portion of Purchasers' issue as inadequately briefed. *See* FED. R. BANKR. P. 8014(a)(8); *Bryant v. Bosco Credit Tr. II Tr. Series 2010-1*, 621 B.R. 113, 121 (N.D. Tex. 2020)

### 3. Exhibit I: PHH Mortgage Company's Business Records Affidavit

Purchasers further complain of the exclusion of Exhibit I,[17] a state-court business records affidavit with attachments from VIP's successor, PHH Mortgage Company ("PHH"). ECF No. 3-2 at 56–76. The bankruptcy court excluded the exhibit because the documents attached to the affidavit—namely, an appraisal of the Property by a different company and a letter excerpt from Mr. Munn—were not created by PHH but were merely compiled by PHH. The bankruptcy court held what Purchasers were doing was "tantamount to attempting to incorporate an expert opinion within a business records exception, which [he thought was] improper." ECF No. 13-1 at 67. As a secondary matter, the trial court also questioned the exhibit's relevance. *Id.* Purchasers argue that the appraisal was created by the lender in the ordinary course of business and was therefore admissible under the business records exception. They also argue that the appraisal included nonvaluation evidence that was relevant to show why Ocwen agreed to the short sale: the Property had been vacant since 2013, the water had been cut off because of a foundation leak, and the home needed $60,000 in repairs. Additionally, Purchasers argue that Mr. Munn's letter excerpt, which they incorrectly refer to as "testimony," was relevant, but they do not explain why. Purchasers further contend that the exclusion is harmful because the excluded evidence shows that the bankruptcy court's reliance on the 2012 value of the Property at $310,700 was not realistic

---

same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

[16]Purchasers do not address the basis for the bankruptcy court's exclusion of Exhibit G or their failure to reoffer it before the bankruptcy court ruled on the Motion, nor does Frost.

[17]Again, Purchasers mistakenly identify the exhibit as Exhibit J in their brief.

or binding regarding the Sale Motion, since the Property had significantly declined in value from 2012 to 2016 and Ocwen's debt had ballooned.

The Court holds that even if the bankruptcy court abused its discretion by excluding Exhibit I, such error was harmless because, as the Court held above, the Sale Order was unambiguous. Thus, the bankruptcy court and this court did not need to look beyond the Sale Order to construe it.[18] The Court overrules this subissue.

### 4. Exhibit L: Gina Feezer's DWQ

Purchasers also complain about the bankruptcy court's exclusion of VIP's Exhibit L, a deposition excerpt of Ocwen employee Gina Feezer. ECF No. 3-2 at 95–108. In the excerpt, Feezer opined about the value of the Property and the Munns' zero equity in it. The bankruptcy court excluded the exhibit because nothing in the exhibit showed that Feezer "had the requisite educational or experiential background to be making a valuation opinion with respect to the [P]roperty that would form the basis for an opinion as to whether or not the [Munns] had equity in the [P]roperty." ECF No. 13-1 at 80–81. Purchasers contend that the exhibit is relevant and admissible under Rule 32(a)(8). However, they do not challenge the trial court's ruling that Feezer was not qualified to offer valuation testimony or testimony about the Munns' equity in the Property. Purchasers therefore waived their challenge to Exhibit L. *See Henry v. City of Taylor, Tex.*, 336 Fed. App'x 410, 411 (5th Cir. 2009) (holding plaintiff waived its appellate challenge by failing to dispute the district court's adverse finding on an essential element); *R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 220 n.3 (5th Cir. 2005) (holding  failure to challenge the district court's alternative basis for a ruling waived the challenge asserted); *see also United States v. Hatchett*, 245 F.3d 625, 644–45 (7th Cir. 2001) (holding failure to address one of the alternative holdings on an issue waives claim of error with respect

---

[18]Further, even if the Sale Order had been ambiguous, the Court would have looked to the record of the proceeding upon which the Sale Order was based to determine the former bankruptcy judge's intent, not at evidence such as Exhibit I. *See Spallone*, 399 F.3d at 424; *In re Bush*, 579 B.R. 688, 698 (Bankr. N.D.N.Y. 2017); *In re 85–02 Queens Blvd. Assocs.*, 212 B.R. 451, 455 (Bankr. E.D.N.Y. 1997).

to that issue). The Court overrules this last subissue and therefore Purchasers' entire fourth issue.

## ORDER

Having **OVERRULED** Purchasers' four issues on appeal, the Court **AFFIRMS** the Appealed Order.

**Further,** given the Court's resolution of Purchasers' appeal, Frost's Motion to Strike (ECF No. 14) is **DISMISSED as moot.**

**SO ORDERED** on this **15th day** of **July, 2022.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE